# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### MARTINSBURG

**VICKEY CINTRON,**

   **Plaintiff,**

**v.**            **Civil Action No.: 3:09CV44**
                **JUDGE BAILEY**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

   **Defendant.**

### REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [12] AND AFFIRMING THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

On June 24, 2009, Plaintiff, Vicky Jane Cintron ("Plaintiff"), by counsel Sean P. Kavanagh, Esq. filed a complaint in this Court to obtain judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner") pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) and 1383(c)(3). On August 28, 2009, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and administrative transcript of the proceedings. On September 28, 2009 and November 24, 2009, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment [12] [15].

Following review of the motions by the parties and the transcript of administrative proceedings, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

# I. PROCEDURAL HISTORY

On June 8, 2005, Plaintiff filed an application for disability insurance benefits, hereinafter "DIB" and supplemental security income, hereinafter, "SSI" alleging disability as of December 15, 2004, due to neck, hip, and ankle pain; reflux disease; depression; anxiety; and an attention deficit hyperactivity disorder. (T. 17, 62, 81-81). The state agency denied Plaintiff's applications initially and on reconsideration (T. 58-60, 62-67, 71-74, 412).

At Plaintiff's request, an administrative law judge (ALJ) held a hearing on June 20, 2007, when Plaintiff, who was represented by an attorney, testified, along with a vocational expert. ( R. 27-57).

The ALJ issued a decision on August 3, 2007, finding that the Plaintiff had the following severe impairments: bipolar disorder, degenerative disc disease, status post right fibular fracture, and status post right medial malleolus fracture. (T. 19). However the ALJ further found that none of these impairments or combinations thereof met the criteria for the listed impairments in 20C.F.R Part 404, Subpart P, Appendix 1 (20C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (T. 20). The ALJ further found that although Plaintiff could no longer perform any of her past relevant work, she could nevertheless perform a limited range of sedentary, unskilled work with the following limitations: she can stand no more than 15-20 minutes at a time ; she can  lift no more than ten pounds occasionally; she can not climb ladders, ropes, or scaffolds; she can stoop only on an occasional basis and she must avoid moderate exposure to temperature extremes and vibration, avoid repetitive pushing/pulling with the right lower extremity (no operating foot controls), and avoid work around dangerous machinery or unprotected heights. (T. 23, 53-57). Relying upon vocational expert testimony, the ALJ found that other work existed in the national economy that

Plaintiff could perform, such as taper printed circuit boards, addresser, and bench work/finish assembler. (T. 25, 55). In so concluding, the ALJ determined that Plaintiff was not "disabled" within the meaning of the Act and therefore not entitled to SSI or DIB. ( R. 25).

On August 15, 2007, the Plaintiff requested review of the ALJ decision dated August 3, 2007. (T. 12). On April 24, 2009, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision for judicial review pursuant to 42 U.S.C.§405(g) and 1383(c)3 (T. 4). On June 24, 2009, the Plaintiff filed a complaint in this Court to obtain judicial review of the final decision of Commissioner. Presently before the Court are the parties' respective motions for summary judgment [15] and [12].

## II. STATEMENT OF FACTS

Plaintiff was forty-one years old at the alleged disability onset date, and is therefore considered a "younger person" according to the regulations promulgated under the authority of the Act. 20 C.F.R.§§404.1563, 416.963 (2009). She has a high school education. (T. 31). Plaintiff has worked as a production leader in fast food business; as a data entry clerk; as a credit card processor for Kelly Services, Inc, processing credit card applications; as a Environmental Services Tech I (cleaning person) for a hospital and as a customer service representative for Aegis. (T. 91-97, 252).

On December 17, 2004, Plaintiff slipped on ice an injured her right leg . (T. 136-40). The Davis Memorial Hospital medical records on that date reflect that Plaintiff fractured her fibula and her medial malleolus (T. 127, 142-143). Plaintiff's leg was placed in a splint, and she received pain medication (T.136-40). On December 19, 2004, the Plaintiff underwent an open reduction internal fixation of the medial malleolus at Ruby Memorial Hospital WVU(T. 190-94). Within several days thereafter, Plaintiff spent four (4) months in jail for writing bad checks. (T. 256-57). On May 17.

2005, a week after Plaintiff's release from jail, Plaintiff sought treatment at Valley Health Care, Inc. complaining of ankle pain and requesting a refill of her pain medications. (T. 256-57). On June 28, 2005, Dr. Emery and Dr. Gocke from WVU Department of Orthopaedics, removed the medial malleolar screws and syndesmosis screws from the right ankle with no complications (T.188-189).

On August 8, 2005, upon follow-up of the hardware removal, Plaintiff had some limitation in the range of motion and swelling of her foot but she could walk with no difficulty (T. 256). At that time, Dr. Ringus and Dr. Emery from WVU Department of Orthopaedics recommended that Plaintiff continue physical therapy (T. 271-79) or home exercises and continue taking anti-inflammatory medication to help diminish swelling (T. 256). The doctors released Plaintiff to bear weight as tolerated and opined that she would "manage quite well in the long term" (T. 256-57).

On October 18, 2005, the Plaintiff returned to Valley Health Care, Inc. requesting refills on her prescriptions and complaining of neck pain. (164-71). The examination revealed that Plaintiff had a full range of motion of her neck, with "slight" tenderness and she had tenderness in her back (T. 166). She had no masses, lymphadenopathy, enlargement or crepitus and no neck rigidity was noted (T. 166).

On June 24, 2005, Plaintiff was evaluated by psychologist, Sharon Joseph, Ph.D. (T. 252-55). Plaintiff had no perceptual or thinking disturbance relative to the presence of hallucinations or delusions (T. 255). She had occasional flashbacks of her previous trauma (T. 255). She had no preoccupations, obsessions, or compulsions (T. 255). Her motor activity was nervous, posture was appropriate, eye contact was average, language usage was average, speed of speaking was normal, and content was relevant (T. 255). She had no psychomotor disturbances (T.255). Her insight was fair (T. 255). Her immediate and remote memory was within normal limits (T. 255). Her recent

memory was moderately impaired (T. 255). Ms. Joseph found that Plaintiff had a global assessment of functioning (GAF)[1] score of 60 (T. 255)

On October 8, 2005, Plaintiff was admitted to Davis Memorial Hospital for seizure-like activity (T. 217-42, 250). Her brain computerized tomography (CT) scan was normal (T. 229). The electroencephalogram (EEG) showed normal findings(T. 230). On October 10, 2005, Plaintiff underwent a consultative neurological examination, performed by M. Mujib Rahman, M.D. (T. 232). The examination revealed a probable psychogenic seizure (T. 233). Dr. Rahman concluded that it was "unlikely" that Plaintiff had a seizure disorder or epilepsy. (T. 233). Dr. Rahman further stated that Plaintiff's EEG and CT scan were normal. (T.233). Dr. Rahman prescribed medication and suggested follow-up with the neurology clinic (T. 234).

On November 30, 2005, the Plaintiff had a comprehensive psychiatric interview and examination at the Appalachian Community Health Center (T. 306). Walter Byrd, M.D. examined Plaintiff's psychiatric abilities (T. 306-10). The examination revealed that Plaintiff was not irrational, paranoid, or delusional (T. 308). She denied hallucinations and had no urges to harm herself (T. 308). She struggled with feelings of worthlessness and discouragement (T. 308). Her episodes of panic were related to her prior traumatic experiences (T. 308). She did not display schizophrenic tendencies (T. 308). She was not experiencing obsessive-compulsive symptoms or social anxiety disorder (T. 308). She reported that her "thoughts jumped all over the place," had extreme amounts of energy, and had difficulty sleeping (T. 308). When she got depressed, it did not

---

[1]   The GAF score is a measurement of a person's overall psychological, social, and occupational functioning and is used to assess mental health. American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994) (DSM-IV). A GAF score of 60 indicates moderate symptoms. Id. at 32 (4th ed. 1994).

last for long (T. 308). She was in no acute physical distress and she walked without impediment (T. 308). Dr. Byrd assessed a GAF of 57 (T. 309).

At the hearing before the ALJ on June 20, 2007, the ALJ asked the Vocational Expert (hereinafter "VE") whether a person of Plaintiff's age, education, vocational background, and residual functional capacity (RFC) could perform work in the national economy (T. 54). The VE testified that a person with this vocational profile could perform work in the national economy, such as taper printed circuit boards, addresser, and bench work/finish assembler. (T. 25, 55). All of these jobs were available in significant numbers in the national economy (T. 55-56).

### III. Administrative Law Judge's Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520 and 416.920, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 30, 2009.
2. The claimant has not engaged in substantial gainful activity since December 15, 2004, the alleged onset date (20C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920 (b) and 416.971 *et seq.*).
3. The claimant has the following severe impairments: bipolar disorder, degenerative disc disease, status post right fibular fracture, and status post right medial malleolus fracture (20C.F.R.§§404.1520( c) and 416.920( c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20C.F.R. Part 404, Subpart P, Appendix 1 (20C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work except for no climbing of ropes, ladders, or scaffolds. She can perform stooping on an occasional basis, stand 15-20 minutes at a time before having to sit. She must avoid moderate exposure to temperature extremes and vibration, avoid repetitive pushing/pulling with the right lower extremity (no operating of foot controls), and avoid work around dangerous machinery or unprotected heights. Moderate difficulties in social functioning and concentration, persistence, or pace result in the claimant being limited to

simple, routine, unskilled tasks involving no more than occasional contact with co-workers, supervisors, or the public.

6.  The claimant is unable to perform any past relevant work.(20C.F.R.404.1565 and 416.965).

7.  The claimant was born on May 16, 1963 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20C.F.R.404.1564 and 416.964)

9.  Transferability of job skills is not material to determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20C.F.R.404.1560( c), 404.1566, 416.960( c) and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2004  through the date of this decision (20 C.F.R. 404.1520(g)416.920(g)).

(T. 17-25).

# IV.  CONTENTION OF PARTIES

## A.     Plaintiff contends.

**1**.    Plaintiff contends that her claim was prejudiced by an initial determination by a non-medical disability examiner and that the ALJ did not adequately evaluate the interplay of psychiatric and psychological impairments. (See Pl's Br. Doc. 12, p5).

**2.**    The Plaintiff contends that the ALJ improperly used Plaintiff's work activity to question her credibility.(See Pl.'s br. Doc. 12, p7)

## B.     Commissioner contends

1.    The Commissioner contends that the ALJ properly assessed Plaintiff's RFC correctly stating at the time of the hearing that he was not bound by the prior determinations made by the state agency. (See Def's Br, Doc. 16, p6)

2. The Commissioner contends that the ALJ did properly assess Plaintiff's credibility according to the regulation governing the evaluation of subjective complaints at 20 C.F.R. § 404.909 and that the Commissioner has met his burden of producing vocational evidence of other work that Plaintiff could perform in the national economy that accommodate her limitations. (See Def's Br, Doc. 16, p6)

## V. DISCUSSION

### A. Standard for Judicial Review of a Decision by the ALJ

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings...are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). "The findings...as to any fact, if supported by substantial evidence, shall be conclusive" *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *See Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938))...Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir.1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979). **"This Court does not find facts or try the case *de novo* when reviewing disability determinations."** *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976); "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as

it is supported by 'substantial evidence.'"

*See Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990) (emphasis added).  With these standards in mind, the Court reviews the decision by the ALJ.

### B.        Standard for Disability and Five-Step Evaluation Process

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work..."[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*See* 42 U.S.C. § 423(d)(2)(A).  In order for the ALJ to determine whether a plaintiff is disabled and therefore entitled to disability insurance benefits, the Social Security Administration has established a five-step sequential evaluation process.   The five steps are as follows (including Residual Functional Capacity Assessment prior to Step Four):

Step One:        Determine whether the plaintiff is engaging in substantial gainful

activity;

Step Two:        Determine whether the plaintiff has a severe impairment;

Step Three:        Determine whether the plaintiff has "listed" impairment;

* Residual Functional Capacity Assessment *
(Needs to be Determined Before Proceeding to Step Four)

Step Four:        Compare residual functional capacity assessment to determine whether the

plaintiff can perform past relevant work;

Step Five:        Consider residual functional capacity assessment, age, education, and

work experience to determine if the plaintiff can perform any other

work.

*See* 20 C.F.R. § 404.1520 (evaluation of disability in general). In following the five-step process

and coming to a decision, the ALJ makes findings of fact and conclusions of law. In this particular

case there are two issues raised by the Plaintiff. The first issue is whether the plaintiffs claim was

prejudiced by the state agency medical examiner, causing the ALJ to improperly assess Plaintiff's

RFC. The second issue is whether the ALJ properly assessed Plaintiff's credibility in making his

determination that Plaintiff was not disabled. This Court has reviewed the decision of the ALJ and

the evidence contained in the record of this case.

## C. Steps of ALJ Assessment that are NOT in dispute

The parties do not dispute the ALJ's findings through Step Two and part of Step Three of the

Analysis. At the end of Step Two the ALJ had found the following severe impairments: bipolar

disorder, degenerative disc disease, status post right fibular fracture, and status post right medial

malleolus fracture. Step Three of the evaluation process requires first that the ALJ determine

whether the Plaintiff has a "listed" impairment. The ALJ found at Step Three that the "Claimant

does not have an impairment or combination of impairments that meets or medically equals one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1..." Other than Plaintiffs assertion

that "simply classifying Plaintiff as suffering from a bipolar disorder does not adequately evaluate

the interplay of psychiatric and psychological impairments", there is no dispute regarding the ALJ's

findings up through step three. Therefore, we will first discuss the ALJ's findings with regard to

the Plaintiff's mental health.

## D.  DISCUSSION OF CONTENTIONS OF PARTIES

### 1a.  ALJ's assessment of Plaintiff's  Mental Health

The ALJ specifically states that the "claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria listings 12.04 or 12.06."  In making this finding the ALJ decided that the neither "paragraph B" nor paragraph "C" criteria were satisfied. The following are the criteria in "paragraph B" and "C" for listings 12.04 and 12.06 that the ALJ determined that Plaintiff failed to meet.

> **B.** Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration;

20C.F.R. Pt.404, Subpt. P, App 1,  §§12.04(B) and 12.06(B)

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04( C).

> C.   Resulting in complete inability to function independently outside the area of ones home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 ( C)

In order to determine whether Plaintiff qualified for Listing 12.04 or 12.06, the ALJ considered the testimony from the ALJ Hearing; the relevant medical history; the medical limitations on Plaintiff's ability to work; and the longitudinal evidence in the record.   In assessing Plaintiff's mental health limitations, the ALJ considered the mental health evidence and correctly determined that it did not support Plaintiff's allegations of a disabling mental health impairment. (T. 23).

The evidence showed that Plaintiff had no perceptual or thinking disturbance relative to the presence of hallucinations or delusions (T. 255).   She had no preoccupations, obsessions, or compulsions (T. 255).   Her language usage was average, speed of speaking was normal and content was relevant (T. 255).   She had no psychomotor disturbance (T. 255).   Her insight was fair (T. 255). Her immediate and remote memory was within normal limits (T. 255).   Her recent memory was moderately impaired (T. 255).   She had a GAF score of 60, indicating only moderate limitations (T. 255); DSM-IV at 32 (4th ed. 1994).   Another mental health examination revealed that Plaintiff was not irrational, paranoid, or delusional (T. 308).   She denied hallucinations and had no urges to harm herself (T. 308).   She did not display schizophrenic tendencies (T. 308).   She was not experiencing obsessive-compulsive symptoms or social anxiety disorder (T. 308).   When she got depressed, it did not last for long (T. 308).   She was fully oriented and had normal range of intelligence (T. 308).   She was in no acute physical distress and she walked without impediment (T. 308).   Dr. Byrd assessed a GAF of 57, indicating only moderate restrictions (T. 309); DSM-IV at 32 (4th ed. 1994).

In addition, the ALJ clearly refers to the medical record in finding that "Given the varied diagnoses and treatment records, the undersigned finds that the claimant's symptoms of depression and anxiety are addressed by the bipolar disorder diagnosis. (T. 20).   The ALJ specifically refers to

Walter Byrd, M.D.'s diagnosis of bipolar disorder, post-traumatic stress disorder, and history of cocaine abuse. (Exhibit 10F) (T. 20)

Plaintiff also asserts that the ALJ should have further developed the mental health evidence of record (Pls Br. At 6-7). The decision to obtain a consultative examination lies within the Commissioner's discretion. <u>See</u> 20C.F.R. §§404.1517, 416.917 ("[W]e may ask you to have one or more physical or mental examinations or tests" if the evidence of record is insufficient to make a decision) (emphasis added). None of the reasons for ordering a consultative examination exist in this case; insufficient medical evidence; inability of the claimant to obtain evidence; need for highly technical or specialized evidence not available form the claimant's medical source; a conflict, inconsistency or ambiguity in the evidence; or a change in the claimant's condition. 20C.F.R.§§404.1519a(b), 416.919a(b).

Where the ALJ questions the claimant about all relevant issues, questions additional witnesses, and reviews the medical evidence in detail, he has fully and fairly discharged his duty to assist claimant in developing the record. <u>Craig v. Chater</u>, 76 F.3d 585, 591 (4th Cir. 1996). Here, Plaintiff was represented during the administrative process. . Hence, the ALJ fully discharged this duty.

### 1b.  ALJ Properly Assessed Plaintiff's RFC

Although Plaintiff suggest that the ALJ adopted the physical RFC as stated by the state medical consultant (T. 62, 64-65), the ALJ specifically stated that he gave the medical consultant's assessment little weight, which is consistent with the Commissioner's regulations. 20C.F.R.§§404.1513; 416.913. The ALJ discussed the evidence, as addressed herein, that supported his RFC assessment (T. 22-24). The responsibility for deciding Plaintiff's RFC assessment rests

with the ALJ. 20C.F.R. §§404.1546(b); 416.946(b). Plaintiff asserts that the record includes a medical opinion that supports a finding that she cannot perform any work (Tr. 394-396). The Court finds that this limited report merely states that Plaintiff had decreased neck range of motion, decreased ankle range of motion, and a weak left arm (Tr. 395). The ALJ addressed these limitations in his RFC assessment by finding that the Plaintiff could only perform sedentary work with occasional stooping and no repetitive pushing/pulling with her right lower extremity (T. 21, Finding No. 5)

Plaintiff, who was represented by an attorney, appeared before the ALJ for an administrative hearing (T. 27-57). The ALJ explained to Plaintiff the purpose of the hearing (T. 29). He informed Plaintiff that he had no prior involvement in this case (T. 29) He stated that he was not bound by the prior determinations made by the state agency (T. 29). Plaintiff's case was a case of first impression. As a result, the ALJ considered the entire record in assessing Plaintiff's RFC (T. 21-24, Finding No. 5). The RFC refers to what a claimant can still do despite her limitations and is an assessment that is based upon all the relevant evidence. 20C.F.R.§§404.1545(a); 416.945. The final responsibility for determining a claimant's RFC is reserved to the Commissioner. 20C.F.R.§§404.1527(e)(2)-(3); 416.927(e)(2)-(3). For cases at the hearing level, the responsibility for deciding a claimant's RFC rest with the ALJ. 20C.F.R.§§404.1546(b); 416.946(b). Thus, the ALJ clearly has the duty and authority to make an independent assessment of a claimant's RFC based on the evidence of record.

Based upon the evidence, the ALJ found that Plaintiff could perform sedentary work that did not involve climbing ropes, ladders, or scaffolds, with only occasional stooping (T. 21, Finding No. 5). She could have no moderate exposure to temperature extremes and vibration; no repetitive

pushing/pulling with her right lower extremity (no operating foot controls); and no work around dangerous machinery or unprotected heights (T. 21, Finding No. 5). The ALJ's RFC assessment is supported by the psychological evidence discussed in 1(a) above and the physical evidence discussed below.

X-rays of Plaintiff's right leg demonstrated a fracture of the fibula with no abnormalities (T. 127, 142-43). Her leg was placed in a splint, and she received pain medication (T.136-40). She underwent an open reduction internal fixation of the medial malleolus (T. 190-94). Several months later, the screws were removed with no complications (T. 188-89). Upon follow-up of the hardware removal, Plaintiff had some limitation in the range of motion and swelling of her foot but she could walk with no difficulty (T. 256). Dr. Ringus released Plaintiff to bear weight as tolerated and opined that she would "manage quite well in the long term" (T. 256-57). An October 18, 2005 examination revealed that Plaintiff had a full range of motion of her neck, with only "slight" tenderness (T. 166). And she had tenderness in her back (T. 166). She had no masses, lymphadenopathy, enlargement, or crepitus and no neck rigidity was noted (T. 166). As the ALJ stated, these mild back findings and a healed fracture are inconsistent with a finding of disability (T. 23). The ALJ more than accommodated any limitations that Plaintiff may have resulting from these impairments by limiting her to minimal exertions level, sedentary work, with additional limitations.

## 2a. Review of ALJ's Assessment of Credibility

The law governing the ALJ's credibility analysis is as follows:

> The regulations describe a two-step process for evaluating symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and

laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms...

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, ***the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record***. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4)...

When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529( c)and § 416.929( c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's

functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p (emphasis added).

The Court finds that the ALJ correctly applied the two-step process and considered the factors enumerated in SSR 96-7p, 20 C.F.R. §§ 404.1529 and 416.929 in evaluating Plaintiff's credibility as is discussed in steps 1 and 2 below.

**(Step 1)   Is there a medically-determinable impairment that could reasonably be expected to cause the symptoms alleged?**

Although the ALJ did not find a "listed" impairment, the ALJ did find that the Plaintiff suffered from the following severe impairments: bipolar disorder, degenerative disc disease, status post right fibular fracture, and status post right medial malleolus fracture.  ( T.19)

**(Step 2)   To what extent do these symptoms limit her ability to do basic work activities through evaluation of the intensity, persistence, and limiting effects of the individual symptoms.**

The ALJ fully explained his reasoning for finding that the objective medical evidence did not support Plaintiff's subjective complaints (T. 17-25).  Plaintiff submits that the ALJ improperly considered work activity in assessing her credibility (Pl.'s Br. At 7-8).

Pursuant to the Commissioner's regulations, allegations of pain and other subjective symptoms must be supported by objective medical evidence.  20C.F.R.§§404.1529, 416.929.  Under the regulations, the ALJ cannot find a claimant disabled based solely on subjective complaints of pain.  20C.F.R. §§404.1528, .1529; 416.928, .929.  Once an ALJ concludes that a medical impairment could reasonably cause the alleged symptoms to exist, he must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the

individual's ability to work.  This analysis obviously requires the ALJ to determine the extent to

which a claimant is accurately stating the degree of pain or the extent to which he is disabled by

it.  20C.F.R.§§ 404.1529(c)(3)(I)-(viii), 416.929(c)(3)(I)-(vii).

Here, the ALJ found that:

> The claimant testified that she worked in 2007, but was terminated
> and quit at the same time.  On March 2, 2007, the claimant asked
> for and was given a note to remain off her job for a half day.  The
> claimant also reported arguing with her husband for about 2 hours
> and reported that he was treating her worse since she started the job.
> (Exhibit 16 F) While the claimant's work during this period is
> considered an unsuccessful work attempt, it demonstrates that the
> claimant felt she was able to work.  There is also a question of
> whether the claimant's motivation for not working was more related
> to interaction with her husband rather than her impairments.  Either
> way, the claimant's allegations of total disability are not entirely
> credible because she apparently stopped working for reasons not
> related to her ability to perform work-related activities.

(T. 23, see also T. 48-52).

The ALJ properly considered Plaintiff's unsuccessful work attempt in addition to the other

evidence in determining that her allegations of disability were not completely credible (T. 23-24).

The ALJ's  finding regarding Plaintiff's credibility was not based solely upon the evidence

surrounding her unsuccessful work attempt.  The ALJ considered other evidence, consistent with

the Commissioner's regulations.  For example, the ALJ found that "The claimant's mild back

impairment and healed fractures are inconsistent with the claimant's allegations of total disability.

(T. 23).  Plaintiff's allegations of disability cannot be found fully credible unless they are

supported by objective medical evidence.  The ALJ evaluated Plaintiff's subjective statements in

accordance with controlling regulations and adequately explained why Plaintiff's claims about the

severity of her pain and symptoms were not credible.

## 2b. Review of Credibility- Subsequent Decision

Plaintiff refers to a subsequent decision that was based upon a new application and involved evidence that was developed after the ALJ's decision (Pl.'s Br. at 8). This decision and the evidence that supports that decision is not before this Court. See Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 95 (4th Cir. 1991) (stating that evidence was probative only when it related to the period on or before the ALJ's decision). Accordingly, because this evidence relates to the period after the ALJ's decision, it cannot be used to challenge the ALJ's decision on substantial evidence grounds.

In conclusion, the ALJ found that based on the Plaintiff's application for a period of disability and DIB filed on June 8, 2005, the Plaintiff has not been disabled under sections 216(i) and 223(d) of the Social Security Act and based on the Plaintiff's application for SSI protectively filed on June 8, 2005, the Plaintiff has not been disabled under section 1614(a)(3)(A) of the Social Security Act. (T. 25). The Court finds that the ALJ's decision is supported by substantial evidence and that the correct law was applied.

## VI.     RECOMMENDATION AND CONCLUSION

For all the above reasons, the undersigned United States Magistrate Judge finds that the ALJ correctly applied the law and that substantial evidence supports the ALJ's decision that Plaintiff is not disabled and can perform other work in the national economy. The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment **[15]**, **DENY** Plaintiff's Motion for Summary Judgment **[12]**, and **AFFIRM** the Decision of the Administrative Law Judge.

The Court notes the Plaintiff's objections to the ruling.

Within **fourteen (14) days of receipt of service of this Report and Recommendation**, any counsel of record may file with the Clerk of the Court any written objections to this Recommendation. The party should clearly identify the portions of the Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the **Honorable John Preston Bailey**. Failure to timely file objections to this Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Recommendation. 28 U.S.C. § 636(b)(1). The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: February 12, 2010**

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE